IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04CV878 |
| | ) | |
| REGINALD ANTHONY FALICE, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILLIE L. COVINGTON, in his official | ) | |
| capacity as DURHAM COUNTY | ) | |
| REGISTER OF DEEDS, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Tilley, Chief Judge

On July 20, 2004 Reginald Falice, a federal prison inmate, filed a paper writing with the Durham County (N.C.) Register of Deeds asserting a lien for $42,000,000,000.00 against the property of approximately 192 persons including judges, court personnel, federal prison employees and others who had in some way come into contact with his case. In this action the United States seeks to strike the lien and requests an injunction to prohibit the filing of similar future documents. For the reasons set forth below, Plaintiff United States' Motion for Summary Judgment [Doc. # 13] and Motion to Supplement its Exhibits in Support of its Motion for Summary Judgment [Doc. # 43] will be GRANTED. Plaintiff's Motion

for Default Judgment [Doc. # 17] will be DENIED AS MOOT and Plaintiff's Motions to Strike [Doc. #s 34, 36 & 38] will also be GRANTED. Doc. # 28 will also be STRICKEN and Doc. #s 44, 45, and 46 will be DENIED.

I.

On July 25, 2000, in Charlotte, North Carolina, the Defendant, Reginald A. Falice, was sentenced to life in prison as a result of his conviction for violations of 18 U.S.C. §§ 2261(a), 2261(b), and 2266, interstate domestic violence resulting in bodily injury and death, and 18 U.S.C. §§ 924(c)(1), 924(j), and 1111, using or carrying a firearm during and in relation to murder. United States v. Falice, No. 3:98CR244-Mu. (Judgment, W.D.N.C. July 25, 2000). On appeal, Mr. Falice's convictions were affirmed by the Fourth Circuit. United States v. Falice, 2001 WL 1082447 (4th Cir. Sept. 17, 2001) (unpublished opinion). However, Mr. Falice continued to file a number of documents in the Western District of North Carolina in which he made a series of "far-fetched allegations" with regard to his criminal prosecution. United States v. Falice, No. 3:98CR244-MU, at *2 (Order, W.D.N.C. Feb. 24, 2003). As a result of Mr. Falice's "harassing and vexatious behavior," he was fined $5,000 and ordered to submit to a pre-filing review of all proposed pleadings before filing any further litigation in the Western District of North Carolina. Id.

In addition, while incarcerated, Mr. Falice filed at least three civil actions or appeals that were dismissed on the grounds that they were "frivolous, malicious,

2

or failed to state a claim." Falice v. Mullen, 2004 WL 1249140, at *1 (D.C. Cir. June 7, 2004) (unpublished opinion) (citing Falice v. Smith, No. 03-CV-155 (E.D. Va. Aug. 13, 2003); Falice v. Mullen, No. 01-CV-455 (W.D.N.C. Aug. 23, 2001); Falice v. Walker, No. 00-CV-619 (W.D.N.C. Jan. 8, 2001)). In one of these cases, Mr. Falice sued a United States District Judge and Deputy Clerk claiming they had violated their statutory and constitutional duties as well as "God's charge to judges." See Falice v. Smith, No. 03-CV-155, at *3 (Opinion and Dismissal Order, E.D. Va. Aug. 13, 2005). In that case, Mr. Falice sought $3,000,000.00 in damages and release from prison. Id.

On January 6, 2003, the United States District Court for the Western District of Virginia issued a preliminary injunction against Mr. Falice and a co-defendant. United States v. Martin et al, No. 2:03CV00157 (Preliminary Injunction, W.D. Va. Jan. 6, 2003). Mr. Falice was enjoined from filing "any financing statement or any other type of lien with the Virginia State Corporation Commission or any other public agency" without first obtaining the approval of the court. Id. In that case, Mr. Falice and a co-defendant filed two Financing Statements with the Virginia State Corporation Commission naming Mr. Falice as the secured party. United States v. Martin et al, No. 2:03CV00157, at *1-2 (Memorandum Opinion, W.D. Va. Feb. 17, 2005). The first Financing Statement purported to memorialize a debt in the amount of $8,000,000.00 allegedly owed to Mr. Falice by three judges of the United States Court of Appeals for the Fourth

3

Circuit, Judge Karen Williams, Judge Robert King, and Judge Clyde Hamilton, and the Clerk of Court for the Fourth Circuit, Patricia Connor. Id. The second Financing Statement purported to memorialize a debt in the amount of $100,000,000.00 allegedly owed by three employees of the United States Penitentiary - Lee County ("USP - Lee") in Jonesville, Virginia where Mr. Falice was incarcerated at the time. Id. The district court later granted the Government's motion for a permanent injunction, concluding that the liens filed by Mr. Falice had "no basis in law or fact" and were "an attempt, through intimidation and harassment, at preventing federal officials from performing their official duties . . . ." Id. at *11.

On July 20, 2004, Mr. Falice filed a UCC Financing Statement ("Financing Statement") with the Durham County Register of Deeds in the Middle District of North Carolina. (Compl., Ex. A.) The Financing Statement, labeled "Instrument # 2004037694," is approximately twenty pages in length and is recorded in Book 4474 on pages 272-292. (Id.) It purports to assert a lien of $42,000,000,000.00 against the property of approximately 192 different individuals. (Id.) The Financing Statement encumbers several different categories of property, including checking accounts, savings accounts, stocks, bonds, mutual funds, wages, pensions, securities, salaries, and motor vehicles. (Id.)

Among the 192 individuals named in the Financing Statement are the following: (1) thirty-two current and former employees of the Federal Judiciary,

4

fourteen of whom are judges of the United States District Courts and United States Courts of Appeals; (2) three North Carolina State Court judges located in Charlotte, North Carolina; (3) sixty-eight current and former employees of the Federal Bureau of Prisons, fifty-six of whom are employed at USP - Lee in Jonesville, Virginia; (4) three court reporters located in Charlotte, North Carolina; (5) Roy Cooper, the North Carolina Attorney General; (6) two employees of the United States Department of Justice in Washington, DC; (7) an employee of the District Attorney's office in Charlotte, North Carolina; (8) Elaine Marshall, the North Carolina Secretary of State, and Franklin Scott Templeton, a former employee of the North Carolina Department of the Secretary of State; (9) one current and one former employee of the United States Probation Office, located in Charlotte, North Carolina; (10) two employees of the Federal Public Defender's Office, including the attorney who represented Mr. Falice during his criminal trial; (11) Orrin Hatch, United States Senator; (12) seven current and former employees of the United States Attorneys' offices in Roanoke, Virginia and Charlotte, North Carolina; and (13) eight private attorneys, located in Raleigh and Charlotte, North Carolina, including two officers of the North Carolina State Bar. (See Govt.'s Supp. Mot. Summ. J., Ex. A [Doc. # 43].)[1]

---

[1] On July 12, 2006, the United States filed a Motion to Supplement its Exhibits in Support of its Motion for Summary Judgment [Doc. # 43]. This Motion will be granted. Attached as Exhibit A to this Motion is a list identifying the majority of the individuals named in Mr. Falice's Financing Statement. The United States was not able to identify fifty of the individuals named in the Financing

5

Many of the individuals named in the Financing Statement were involved in Mr. Falice's criminal trial, sentencing, and appeal in the Western District of North Carolina and before the Fourth Circuit Court of Appeals. For example, United States District Judge Graham Mullen presided over Mr. Falice's criminal trial and Judge Karen Williams, Judge Robert King, and Judge Clyde Hamilton heard Mr. Falice's appeal to the Fourth Circuit Court of Appeals. All four of these individuals are named in the Financing Statement along with a number of employees of the Western District of North Carolina and the Fourth Circuit Court of Appeals. (See Govt.'s Supp. Mot. Summ. J., Ex. A, 3.) In addition, several of the individuals named in the Financing Statement are employed at USP - Lee in Jonesville, Virginia, the prison facility where Mr. Falice was incarcerated at the time the Financing Statement was filed. (See id. at 4-5.) These individuals work in such positions as warden, nurse, officer, counselor, teacher, food service manager, and case manager. (See id.) Finally, a number of the individuals named in the Financing Statement are involved in the many civil actions that Mr. Falice has filed in other jurisdictions. See, e.g., Falice v. Smith, No. 03-CV-155 (E.D. Va. Aug. 13, 2003); Falice v. Mullen, No. 01-CV-455 (W.D.N.C. Aug. 23, 2001); Falice v. Walker, No. 00-CV-619 (W.D.N.C. Jan. 8, 2001). In particular, Mr. Falice has named Senior United States District Judge Glen Williams of the Western District of Virginia in the Financing Statement. As noted earlier, Judge Williams entered a

---

Statement.

permanent injunction against Mr. Falice on February 17, 2005, prohibiting him from filing future common law liens without prior approval of that court.  See United States v. Martin et al, No. 2:03CV00157 (Memorandum Opinion, W.D. Va. Feb. 17, 2005).  Notably, Mr. Falice has also named the four individuals who were the subject of the common liens in that case (Judge Robert King, Judge Karen Williams, Judge Clyde Hamilton, and Patricia Connor) in the Financing Statement at issue in this case.  (See Govt.'s Supp. Mot. Summ. J., Ex. A, 3.)

On September 28, 2004, the United States filed a Complaint in the Middle District of North Carolina against Defendants Reginald A. Falice and Willie L. Covington in his official capacity as the Durham County Register of Deeds [Doc. # 1].  Mr. Covington filed an Answer in this case on October 15, 2004 [Doc. # 4].  Mr. Falice, however, did not file an Answer but chose instead to file a "Notice of Acceptance for Value/Affidavit of Reginald Falice" [Doc. # 5] and "Request to Schedule a Hearing to Resolve Jurisdictional Matter" [Doc. # 6].  These documents were stricken by the Court in a Deficiency Order dated October 27, 2004 [Doc. # 8] for failure to attach a certificate of service.  Mr. Falice then filed a "Response to Deficiency Order" [Doc. # 9] on November 29, 2004.  This document was also stricken in a Deficiency Order dated December 10, 2004 [Doc. # 10] because (1) it failed to specify the relief that it sought, (2) the document caption did not identify the nature of the document, and (3) it did not include a certificate of service.

The Deficiency Orders of October 27 and December 10, 2004 specifically

7

noted that they were issued without prejudice to the filing of proper documents. Nonetheless, Mr. Falice failed to file a proper Answer in this case and therefore, on February 10, 2005, the United States moved for an Entry of Default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure [Doc. # 11]. The Clerk of Court granted this motion on February 16, 2005 [Doc. # 16]. In addition, the United States filed a Motion for Summary Judgment on February 14, 2005 [Doc. # 13] in which it requested that (1) Mr. Falice's Financing Statement be declared null and void and (2) Mr. Falice be permanently enjoined from filing any further common law liens. Mr. Falice responded on February 28, 2005 [Doc. # 19] and the United States submitted its Reply on March 9, 2005 [Doc. # 23]. The Defendant Willie L. Covington, in his official capacity as Durham County Register of Deeds, consented to the proposed judgment submitted in connection with the United States' Motion for Summary Judgment. In addition, the United States moved for Default Judgment on February 18, 2005 pursuant to Rule 55(b) of the Federal Rules of Civil Procedure [Doc. # 17]. Mr. Falice has not responded to the United States' Motion for Default Judgment.

Mr. Falice filed a "Letter Motion to Stay Proceedings" in this case on February 28, 2005 [Doc. # 21]. This document was stricken in a Deficiency Order dated March 7, 2005 [Doc. # 22] because it did not include a certificate of service and the document caption did not identify the nature of the document. Mr. Falice then filed an "Affidavit of Facts" [Doc. # 24] which the United States moved to

8

strike on April 13, 2005 [Doc. # 25].  Mr. Falice objected to the United States'
Motion to Strike on April 28, 2005 [Doc. # 27] and also filed a "Notice to Court to
Call a Stop, Termination, Cease to all Court Processes by Mail" on May 20, 2005
[Doc. # 28].  On August 26, 2005, Mr. Falice filed a "Contract for
Release/Draft/Assignment" [Doc. # 29] which was stricken in a Deficiency Order
dated September 7, 2005 [Doc. # 30] for failure to include a certificate of service.
Mr. Falice resubmitted the "Contract for Release/Draft/Assignment" on September
19, 2005 [Doc. # 32] in compliance with the Deficiency Order.  He also submitted
a "Notice of Written Communication" [Doc. # 31] and "Notice of Written
Communication/Invoice" [Doc. # 33] on May 19 and May 21, 2005.  In addition,
Mr. Falice filed a document entitled "Quit Pro Quo" [Doc. # 44] on July 24, 2006,
"Quit Pro Quo" [Doc. # 45] on August 14, 2006, and "Covenant Agreement"
[Doc. # 46] on August 16, 2006.  In the Contract for Release/Draft/Assignment
[Doc. # 32], Mr. Falice writes:

> This commercial instrument is presented in accordance with your
> contractual "redress of grievance" clause stipulated on both
> state/federal constitutions. Whereas both corporate documents
> provide after biblical principals [of law]; when someone has been
> wrong-ed; the wrong must be corrected and the victim must receive
> restitution.  See example at Exodus 22:12, Luke 19:8.  Herewith,
> Secured Party, you have been named as [ONE] who have enjoined to
> harm Reginald Anthony Falice© (First Party) absent claim, cause,
> interest or otherwise.  From which First Party, seeks restitution.
> Instrument directed to your attention for a 'Specific Performance.'
> Note, Instrument is not a "MOTION."  If Document is construed,
> recharacterized, re-interpreted, to form any intent not expressed
> throughout four (4) corners of these writings; charge is
> $300,000,000.00 (three hundred million) dollars.  If (any) Federal

9

> Rules of Civil Procedures are applied against this instrument, charge is
> $300,000,000.00 (three hundred million) dollars. Contract for
> release, is presented in commerce to correct those wrongs in conflict
> with your company's purpose, mission statement and policy.
> Witnesses will verify evidence and attest to your response(s).[2]

(Contract for Release/Draft/Assignment 2-3.) The United States moved to strike the "Notice of Written Communication" [Doc. # 31], "Contract for Release/Draft/Assignment" [Doc. # 32], and "Notice of Written Communication/Invoice" [Doc. # 33] on September 27, 2005 [Doc. #s 34, 36 & 38].

II.

Summary judgment is appropriate only when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if the evidence is sufficient for a reasonable trier of fact to find in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Material facts are those facts identified by the controlling law as essential elements of the claims asserted by the parties. Id.; Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). There is no genuine issue of material fact if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

---

[2] Many of Mr. Falice's filings in this case contain similar language to that of the Contract for Release/Draft/Assignment. See, e.g., Doc. #s 28, 31, 32 & 33.

(1986).

## A.

In his Response to the United States' Motion for Summary Judgment, Mr. Falice contends that the United States must prove that there is no "legal and/or factual basis to support liens and obligations asserted . . . against named individuals on Financing Statement." (Def.'s Resp. 8B.) However, Mr. Falice is incorrect in this assertion: he cannot rest upon his pleadings "but must instead provide evidence or point to evidence already on the record that would be sufficient to support a . . . verdict in [his] favor." Anderson, 477 U.S. at 248. Mr. Falice has failed to provide any evidence in this case that the liens created by the Financing Statement are based on any legitimate debt or any other form of contractual obligation between himself and any of the individuals named in the Financing Statement.

As mentioned earlier, Mr. Falice named in the Financing Statement a number of federal and state officials and employees who were involved in either his criminal trial in the Western District of North Carolina, his appeal to the Fourth Circuit Court of Appeals, his incarceration at USP-Lee in Jonesville, Virginia, or any one of a number of civil suits that Mr. Falice has filed in other jurisdictions. (See Govt.'s Mot. Supp. Summ. J., Ex. A.) Based upon the record, it appears that Mr. Falice's criminal trial, appeal, incarceration, and civil cases were the only occasions for these individuals to come into contact with him. The only supportable

11

inference is that Mr. Falice filed the present Financing Statement in order to harass and retaliate against these federal and state officials and employees for their involvement in his criminal conviction, prison sentence, and civil lawsuits. See United States v. Reeves, 782 F.2d 1323, 1326 (5th Cir. 1986) (adopting the district court's conclusion that because government agent's only contact with defendant was during the investigation of defendant, defendant filed lien on agent's property in retaliation for that investigation).

Moreover, Mr. Falice asserts that he has a right to create liens on the property of the federal and state officials and employees named in the Financing Statement because of misconduct that he alleges occurred during his criminal trial and incarceration. In his Response, he explains that he "was forced to file liens to attempt remedy and recourse" because of this alleged misconduct. (Def.'s Resp. 10B.) Thus, Mr. Falice did not file the Financing Statement for any legitimate commercial business reason, but in an effort to "remedy" his criminal conviction through the harassment of those officials and employees whom he views as responsible for that conviction. However, "neither state nor federal law provides that a citizen may file a lien on the property of a public official for alleged wrongs committed by that official against a citizen without the existence of a judgment in the citizen's favor." United States v. Barker, 19 F. Supp. 2d 1380, 1384 (S.D. Ga. 1998). There is simply no legal basis for Mr. Falice's assertion that he can file a "UCC Financing Statement" or any other form of lien in response to misconduct

12

he alleges to have occurred during his trial and incarceration.[3]

It is therefore clear that (1) the Financing Statement was filed in an effort to harass those individuals named and (2) the Financing Statement was *not* filed on the basis of any genuine commercial obligation owed to Mr. Falice. Accordingly, because the liens created by Mr. Falice's Financing Statement are without any legitimate legal or factual basis, the Financing Statement will be declared null, void, and without any legal effect.[4]

B.

In its Motion for Summary Judgment, the United States requests that Mr. Falice be permanently enjoined from filing any further common law liens. (Mot.

---

[3] Moreover, even if proof of wrongdoing did furnish a basis for filing a lien, there is no evidence in the record that any of these individuals engaged in any misconduct or otherwise failed to act within the scope or in furtherance of their official duties when they came into contact with Mr. Falice.

[4] A number of courts have condemned the use of common law and commercial liens for the purpose of harassing and retaliating against government officials and employees for carrying out their official duties. These courts have also declared such liens to be null, void, and without any legal effect. See, e.g., United States v. MacElvain, 858 F. Supp. 1096, 1100 (M.D. Ala. 1994) ("This Court condemns such self-help. It is not authorized by law. There is no legal basis for filing these common law liens, complaints, and commercial notes. Every court to consider the validity of these documents has found them to be without basis."); Saenger v. Brown, 1988 WL 184863, at *1 (D. Or. May 3, 1988) (unpublished opinion) ("These documents entitled "Common Law Liens" . . . are null, void, and of no legal effect. [They] are part of a campaign by [the defendants] to harass federal employees in their personal lives, in retaliation for these federal employees' attempts to carry out their duties . . . ."); United States v. VanDyke, 568 F. Supp. 820, 822 (D. Or. 1983) ("It is clear that the various filings of [the defendants] in pursuit of their vengeance against federal personnel are void and of no legal effect.").

Summ. J. 2-3.) "Permanent injunctive relief is appropriate where (i) there is no adequate remedy at law, (ii) the balance of the equities favors the moving party, and (iii) the public interest is served." Nat'l Org. for Women v. Operation Rescue, 726 F. Supp. 1483, 1496 (E.D. Va. 1989), aff'd 914 F.2d 582 (4th Cir. 1989), rev'd on other grounds, 506 U.S. 263 (1993). The decision to grant permanent injunctive relief is within the sound discretion of the trial court. Id.

There is no other adequate remedy at law in this case. In addition to filing the Financing Statement at issue in the present case[5], Mr. Falice has filed a number of frivolous lawsuits in the past[6] and has filed a number of documents in the present case purporting to impose some form of indebtedness to him within the Middle District of North Carolina.[7] Moreover, an injunction has previously been issued against Mr. Falice as a result of a commercial lien that he filed against four of the individuals named in the present Financing Statement with the Virginia State Corporation Commission. See United States v. Martin et al, No. 2:03CV00157, at *10-11 (Memorandum Opinion, W.D. Va. Feb. 17, 2005) (enjoining Falice and co-

---

[5] The filing of the UCC Financing Statement in Durham without first submitting it for court approval violates the terms of the permanent injunction entered against Mr. Falice in the Western District of Virginia.

[6] See, e.g., Falice v. Mullen, 2004 WL 1249140, at *1 (D.C. Cir. June 7, 2004) (citing Falice v. Smith, No. 03-CV-155 (E.D. Va. Aug. 13, 2003); Falice v. Mullen, No. 01-CV-455 (W.D.N.C. Aug. 23, 2001); Falice v. Walker, No. 00-CV-619 (W.D.N.C. Jan. 8, 2001)).

[7] See, e.g., Doc. #s 28, 31, 32, 31 & 33.

14

defendant from filing any financing statements with the Virginia State Corporation Commission as well as any other lien with any other public agency without prior approval of the court). He is therefore likely to continue to harass government officials and employees in this manner, requiring the United States to file suit in various federal courts in response to each of Mr. Falice's filings. Moreover, as Mr. Falice is currently serving a life sentence, other sanctions are unlikely to be as effective in preventing him from filing frivolous common law liens in the future.

Furthermore, the balance of equities clearly favors the issuance of a permanent injunction in this case. A number of courts have found that government officials and employees whose assets are encumbered by fraudulent common law liens suffer irreparable harm. See, e.g., MacElvain, 858 F. Supp. at 1100 ("The filing of such frivolous documents imposes irreparable harm on the individuals and entities that are the victims of the liens."); Saenger, 1988 WL 184863, at *2 ("Defendants are private individuals attempting to carry out their duties as employees of the federal government. Plaintiffs have resorted to an extreme form of tax protest that harasses defendants in their private lives."); VanDyke, 568 F. Supp. at 822 ("[The defendants], in filing these lawsuits and documents, impose irreparable harm upon the employees of the federal government . . . .").

In addition, the United States most certainly has an interest "in protecting its employees from such blatant forms of retaliatory harassment arising out of actions pertaining to their official duties." United States v. Poole, 916 F. Supp. 861, 863

15

(C.D. Ill. 1996) (enjoining defendant who filed common law lien against prosecutor and court appointed defense counsel in retaliation for prosecution); see also Barker, 19 F. Supp. 2d at 1384 ("Defendants' method of lien filing, i.e. filing liens whenever the individual feels grieved or wronged by a public official, unduly interferes with the government's ability to perform its duties."). The United States also suffers irreparable harm when it is forced to spend limited resources to defend its employees from Mr. Falice's campaign of harassment. Mr. Falice, on the other hand, will not be harmed by the issuance of an injunction in this case. The Financing Statement filed with the Durham County Register of Deeds is without any factual or legal basis. An injunction would simply require Mr. Falice to submit for prior court approval all future documents through which he attempts to assert a lien; it will not impair his ability to assert any legitimate claims or liens.

Finally, the public interest also favors the issuance of a permanent injunction in this case. "American citizens at large suffer when our public officials are not able to perform their duties free of harassment and attempts at extortion." Barker, 19 F. Supp. 2d at 1384. In addition, the filing of frivolous liens against the property of judges, prosecutors, and other employees of the federal and state governments interferes with the orderly and efficient administration of justice. See In re Martin-Trigona, 763 F.2d 140, 141 (2d Cir. 1985) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.") (citation

16

omitted). A permanent injunction is therefore warranted in this case.[8]

Accordingly, Mr. Falice will be permanently enjoined from filing any form of lien against any of the individuals named in the present Financing Statement anywhere in the United States without first obtaining the approval of this Court. In order to obtain the Court's permission, Mr. Falice must provide the Court with either (1) a copy of a prior valid judgment that has been obtained against the individual or individuals whom he wishes to name in a future lien document or (2) information which he believes constitutes a valid legal basis under the law of the place he wishes to file for asserting a lien against any one of these individuals.

III.

The United States has also moved for a default judgment against Mr. Falice pursuant to Rule 55(b) of the Federal Rules of Civil Procedure as he has failed to file an Answer in this case. Since the Court has determined that sufficient grounds

---

[8] The factors to be considered in evaluating a request for a pre-filing injunction provide an appropriate analogy, and also favor the issuance of a permanent injunction, in this case. The entry of a pre-filing injunction is appropriate when a plaintiff's lawsuits are (1) "duplicative and vexatious," (2) such that "he cannot have a reasonable expectation of prevailing," and (3) have "caused needless expense and burdens to other parties and the court . . . ." Tinsley v. Moore Business Forms, Inc., 1994 WL 249239, at *1 (4th Cir. June 9, 1994) (unpublished opinion) (adopting factors announced in Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986), cert denied, 479 U.S. 1099 (1987)). Not only does Mr. Falice have a history of vexatious litigation, he is clearly on notice that these common law liens are frivolous in nature as he as previously been enjoined from filing them. See United States v. Martin et al, No. 2:03CV00157 (Memorandum Opinion, W.D. Va. Feb. 17, 2005). Moreover, his actions are burdensome and costly.

exist to grant the Government's Motion for Summary Judgment, the Motion for Default Judgment will be denied as moot.

IV.

Mr. Falice has filed a number of documents in this case. Among those documents that have not been stricken by Deficiency Orders are the following: "Affidavit of Facts" [Doc. # 24], "Notice to Court to Call a Stop, Termination, Cease to all Court Processes by Mail" [Doc. # 28], "Notice of Written Communication" [Doc. # 31], "Contract for Release/Draft/Assignment" [Doc. # 32], "Notice of Written Communication/Invoice" [Doc. # 33], "Quit Pro Quo" [Doc. # 44], "Quit Pro Quo" [Doc. # 45], and "Covenant Agreement" [Doc. # 46]. The United States has moved to strike all of these documents [Doc. #s 34, 36 & 38] with the exception of "Notice to Court to Call a Stop, Termination, Cease to all Court Processes by Mail" [Doc. # 28], "Quit Pro Quo" [Doc. # 44], "Quit Pro Quo" [Doc. # 45], and "Covenant Agreement" [Doc. # 46].

Local Rule 7.3, entitled "Motion Practice," provides for the filing the following documents: (1) a motion, (2) a response to a motion, and (3) a reply. It does not provide for the filing of any of the documents filed by Mr. Falice. Nor has Mr. Falice requested leave to file any of these documents. The "Affidavit of Facts" appears to be intended as a surreply to the United States' Motion for Summary Judgment. However, not only has Mr. Falice failed to move for leave of the Court to file a surreply as provided in Local Rule 7.3, no new arguments were raised in

18

the United States' Reply brief such that fairness would require the filing of a surreply.  See Lewis v. Rumsfeld, 154 F. Supp. 2d 56, 61 (D.D.C. 2001). Therefore, the United States' motions to strike will be granted.  In addition, the Court will, on its own motion, strike Mr. Falice's "Notice to Court to Call a Stop, Termination, Cease to all Court Processes by Mail" [Doc. # 28] as this document does not comply with Local Rule 7.3.

Finally, Mr. Falice has recently filed the following documents in this case: "Quit Pro Quo" [Doc. # 44], "Quit Pro Quo" [Doc. # 45], and "Covenant Agreement" [Doc. # 46].  These documents appear to be intended as some sort of settlement offer by Mr. Falice in which he offers to withdraw his Financing Statement in exchange for the expungement of his criminal conviction as well as the Government's withdrawal of its filings in the present case.  As these documents are clearly frivolous, they will be denied.

V.

For the foregoing reasons, Plaintiff United States of America's Motion for Summary Judgment [Doc. # 13] will be GRANTED and Motion for Default Judgment [Doc. # 17] will be DENIED AS MOOT.  The United States' Motion to Supplement its Exhibits in Support of its Motion for Summary Judgment [Doc. #

19

43] and Motions to Strike [Doc. # 34, 36 & 38] will also be GRANTED. Doc. # 28 will be STRICKEN and Doc. #s 44, 45, and 46 will be DENIED.

This the day of August 25, 2006

                                                /s/ N. Carlton Tilley, Jr.
                                              United States District Judge